UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
————————————————————————————

EDNA MITCHELL-MIRANDA,

                    Plaintiff,                    08 Civ. 4031 (JGK)

       - against -                                MEMORANDUM OPINION
                                                      AND ORDER
CITY OF NEW YORK, ET AL.,

                    Defendants.
————————————————————————————

JOHN G. KOELTL, District Judge:

       The plaintiff, Edna Mitchell-Miranda, filed this action
alleging various claims against the City of New York ("the
City"), the City Department of Corrections ("DOC"), the DOC
Health Management Division ("HMD"), and individual DOC employees
(collectively, "the City defendants").  She also alleged claims
against the Correction Officers' Benevolent Association (the
"Union") and Union Representative Allen Blake (collectively,
"the Union defendants").  Initially, the plaintiff alleged
claims of gender and disability discrimination based on
individual incidents of alleged discrimination, as well as
hostile work environment, and constructive discharge against
some or all of the City and Union defendants in violation of
Title VII of the Civil Rights Act of 1964 ("Title VII"), 42
U.S.C. § 2000 et seq., the Americans with Disabilities Act of
1990 ("ADA"), 42 U.S.C. § 12101 et seq., and New York State
Executive Law § 296 ("NYSHRL").  The plaintiff also alleged

state law claims against the individual City defendants and the Union defendants for extreme emotional distress, and against Allen Blake for sexual harassment.  At oral argument on December 10, 2010, the plaintiff stated that her only federal claims were those for hostile work environment and constructive discharge, eliminating her claims based on alleged individual incidents of gender or disability discrimination.  (Hr'g Tr. at 30:13-18, 33:1-4.)  Therefore, the plaintiff's remaining claims under Title VII and the ADA are limited to hostile work environment and constructive discharge.

All of the defendants move for summary judgment pursuant to Federal Rule of Civil Procedure 56.  The defendants assert that several of the plaintiff's individual discrimination claims are time barred or unexhausted, and that all of the plaintiff's federal and state claims are without merit.

## I.

The standard for granting summary judgment is well established.  "The Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  "The party seeking summary judgment bears the burden of establishing that no genuine issue of material fact exists . . . ."  Rodriguez v. City of New York, 72

F.3d 1051, 1060-61 (2d Cir. 1995). In determining whether that burden has been met, the Court is required to resolve all ambiguities and credit all factual inferences that could be drawn in favor of the party against whom summary judgment is sought. See, e.g., Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). "It is not the province of the court itself to decide what inferences should be drawn . . .; if there is any evidence in the record from any source from which a reasonable inference could be drawn in favor of the nonmoving party, summary judgment is improper . . . ." Howley v. Town of Stratford, 217 F.3d 141, 151 (2d Cir. 2000); see also Bank of Am., N.A. v. Vergest Ltd., No. 10 Civ. 4682, 2011 WL 92751, at *1 (S.D.N.Y. Jan. 11, 2011).

## II.

The following facts are undisputed unless otherwise noted.

## A.

The plaintiff was appointed to the DOC as a Probationary Correction Officer on June 2, 2005 and thereafter entered the Correction Academy. (City Defs.' 56.1 Stmt. ¶ 3.)[1] After graduating from the Correction Academy, the plaintiff was

---

[1] The plaintiff explicitly admitted all of the statements in the City defendants' Rule 56.1 Stmt. with the exception of ¶ 102. (Pl.'s Resp. to City Defs.' 56.1 Stmt.)

assigned to the Otis Bantum Correctional Center ("OBCC"), where she worked a schedule of four days on, followed by two days off, otherwise known as "the wheel." (City Defs.' 56.1 Stmt. ¶¶ 4-5.) As a Probationary Correction Officer, the plaintiff was required to serve a two-year probationary period. (City Defs.' 56.1 Stmt. ¶ 6.)

**B.**

DOC Directive 2258R-A states that "a member who reports sick on twelve (12) or more work days within a twelve month period shall be classified as chronic absent." (City Defs.' 56.1 Stmt. ¶ 15.) This calculation excludes absences that occur while confined to any admitting hospital; the first absence from an injury in the line of duty; and, subject to such limitations as the DOC imposes, absences related to pregnancy. (City Defs.' 56.1 Stmt. ¶ 16; Canfield Decl. Ex. F ("Directive #2258R-A") at § II(A)(1).)

The plaintiff was absent for three days between September 2005 and December 16, 2005. (City Defs.' 56.1 Stmt. ¶ 28; Canfield Decl. Ex. H at 2.) Beginning December 17, 2005, the plaintiff missed eleven consecutive days. (City Defs.' 56.1 Stmt. ¶ 29; Canfield Decl. Ex. H at 2.) On or about December 20, 2005, the plaintiff was diagnosed with an upper respiratory infection. (City Defs.' 56.1 Stmt. ¶ 30.) Despite evidence of

4

this infection, the plaintiff now alleges that the absences in December 2005 were because of her pregnancy, which she was unaware of at the time. (Canfield Decl. Ex. D ("Pl.'s July 20 Dep.") at 47:4-9, 18-23.)

In a memorandum dated January 10, 2006, the plaintiff was notified that she had been designated "chronic absent." (City Defs.' 56.1 Stmt. ¶ 39.) The plaintiff did not appeal her "chronic absent" designation although she had the right to do so under DOC appeal procedures. (City Defs.' 56.1 Stmt. ¶ 40; Directive #2258R-A at § III(B).) According to Directive #2258R-A, once an officer is designated as chronic absent, the officer must arrive in person at the HMD to report sick unless the officer is too ill to report to HMD, in which case the officer may obtain a letter from a physician or hospital. (Directive #2258R-A at § III(I).)

### C.

The plaintiff testified that she learned that she was pregnant on or about January 14, 2006. (City Defs.' 56.1 Stmt. ¶ 43; Canfield Decl. Ex. C ("Pl.'s July 1 Dep.") at 54:18-20.) A few days later, the plaintiff met with Dr. Lowe at HMD for a scheduled appointment and informed him that she believed she was pregnant. (City Defs.' 56.1 Stmt. ¶ 44.) Dr. Lowe instructed

the plaintiff to provide medical documentation of her pregnancy.
(City Defs.' 56.1 Stmt. ¶ 44.)

On January 27, 2006, the plaintiff experienced pain and
pressure and believed she was having complications with her
pregnancy.  (Pl.'s July 1 Dep. at 59:19-60:2.)  She contacted
HMD and informed Officer Robinson that she was going to the
emergency room because of complications with her pregnancy.
(City Defs.' 56.1 Stmt. ¶¶ 47, 49.)  Officer Robinson informed
the plaintiff that HMD had no record of her pregnancy and that
the plaintiff was required to report to HMD by 10:00 a.m. on
January 28, 2006 or she would be labeled AWOL.  (City Defs.'
56.1 Stmt. ¶ 47.)  In order to avoid being labeled AWOL, the
plaintiff left the hospital emergency room and reported to HMD
on the morning of January 28, 2006.  (City Defs.' 56.1 Stmt. ¶¶
52, 56; Pl.'s July 1 Dep. at 66:11-22; Canfield Decl. Ex. V.)
While at HMD, the plaintiff met with Dr. Sach, who, after
observing that the plaintiff had unhooked the IV from the
hospital, allegedly said, "don't come back here.  If we need
you, we'll come to you."  (City Defs.' 56.1 Stmt. ¶ 53; Pl.'s
July 1 Dep. at 68:22-25, 69:8-9.)

The plaintiff returned to the hospital and learned that the
fetus had no heartbeat.  (City Defs.' 56.1 Stmt. ¶ 55.)  On
February 4, 2006, the plaintiff miscarried her pregnancy.  (City
Defs.' 56.1 Stmt. ¶ 58; Pl.'s July 1 Dep. at 74:4-9.)  The

plaintiff was out sick related to her pregnancy from January 27 to March 18, 2006.  (City Defs.' 56.1 Stmt. ¶ 57.)

The plaintiff claims that she asked Allen Blake, the Union Representative for OBCC, for assistance in resolving issues with HMD relating to her treatment while pregnant and her designation as chronic absent, but that he refused to assist her because she would not respond to his sexual advances.  (Pl.'s Am. Compl. ¶¶ 27-28.)  The Union conducted an inquiry on the plaintiff's behalf in October 2006; the DOC reviewed the plaintiff's record and determined that the plaintiff's absences between December 2005 and January 5, 2006 were not related to her pregnancy. (City Defs.' 56.1 Stmt. ¶ 60; Union Defs.' 56.1 Stmt. ¶¶ 43-45; Pl.'s Resp. to Union Defs.' 56.1 Stmt. ¶¶ 40-49.)  The plaintiff's chronic absent status was not changed. (City Defs.' 56.1 Stmt. ¶ 60.)

### D.

When the plaintiff returned to work in March 2006, she continued to work "the wheel," a rotating tour with four days on and two days off.  (Defs.' 56.1 Stmt. ¶ 61.)  The plaintiff claims that Captain Hewlett at OBCC discriminated against her by changing her schedule for October 21, 2006, preventing her from taking the promotional captain's exam.  (Pl.'s Am. Compl. ¶ 24.) The plaintiff alleges that Captain Hewlett discriminated against

7

her because she was a probationary officer and because of what
had happened with her pregnancy.  (Pl.'s July 20 Dep. at 87:5-
12.)  The plaintiff was not eligible to become a Captain in
October 2006 because she was a probationary employee and a pre-
requisite for the position was a minimum of two years as a
permanent Correction Officer.  (City Defs.' 56.1 Stmt. ¶¶ 65-
66.)

    Between September 25, 2006 and March 19, 2007, the
plaintiff claims, she applied for 27 steady posts.  (City Defs.'
56.1 Stmt. ¶¶ 100-102; Canfield Decl. Ex. AA.)  Because the
plaintiff was designated as chronic absent, she was not eligible
for a steady post as set forth in Directive #2258R-A.  (City
Defs.' 56.1 Stmt. ¶ 105.)


                              **E.**

    The plaintiff filed a complaint with the New York State
Division of Human Rights (the "NYSDHR") on May 11, 2007.
(NYSDHR Compl., annexed as Ex. P to Smith Affirmation and Ex. EE
to Canfield Decl. ("NYSDHR Complaint").)  The complaint's cover
sheet charged the DOC with "an unlawful discriminatory practice
. . . because of disability, sex, opposed
discrimination/retaliation," while the complaint itself
described the bases of discrimination as disability, pregnancy,
and retaliation for opposing discrimination, without mentioning

sex.  (NYSDHR Compl.)  The complaint itself also asserted that incidents of disability and pregnancy discrimination resulted in a hostile work environment.  (NYSDHR Compl. §§ 3, 5.)  The plaintiff specifically pointed to Captain Hewlett's refusal to give her time off to take the captain's exam and the plaintiff's inability to receive a steady tour or a steady post.  (NYSDHR Compl. §§ 3, 5.)  The plaintiff also described the incidents in January and February 2006 concerning her pregnancy and miscarriage and stated that Union Representative Allen Blake told her that she had control of her situation, which she inferred to be a suggestion that she should not have gotten pregnant because she was on probation.  (NYSDHR Compl. § 5.)  She made no allegations of improper sexual advances by Blake.

**F.**

The plaintiff filed the present action against the City and Union defendants, alleging discrimination under federal and New York law.  The plaintiff's complaint includes several incidents that were not described or referenced in the NYSDHR Complaint. The plaintiff claims that these additional incidents were discriminatory and contributed to a hostile work environment.

1.

The plaintiff alleges that she was sexually harassed by Union Representative Allen Blake when he asked her out on dates on numerous occasions, and, on one occasion "tr[ied] to pull her forward to kiss him." (Pl.'s Am. Compl. ¶ 28.)

2.

The plaintiff alleges that Captain Spencer at OBCC discriminated against her because she was a new officer.  On August 2, 2006, the plaintiff visited a doctor at the Prison Health Service Clinic of OBCC for vomiting and severe abdominal pain.  (Pl.'s Am. Compl. ¶ 29; City Defs.' 56.1 Stmt. ¶ 72.) After seeing the doctor, the plaintiff was allegedly instructed to wait for someone to escort her to the hospital.  (City Defs.' 56.1 Stmt. ¶ 73.)  While she was waiting, the plaintiff alleges that Captain Spencer laughed and repeatedly commented that he would escort the plaintiff to the hospital if he was given the rest of the day off.  (Pl.'s Am. Compl. ¶ 29; Def.'s 56.1 Stmt. ¶ 74.)  The plaintiff testified that Officer Jennings ultimately escorted her to the hospital.  (Defs.' 56.1 Stmt. ¶ 76.)

3.

The plaintiff alleges that multiple discriminatory incidents occurred relating to a back injury.  On or about March

26, 2007, the plaintiff incurred a back injury while on the job and was given disability leave.  (Pl.'s Am. Compl. ¶¶ 30-31; Defs.' 56.1 Stmt. ¶¶ 79, 86, 92.)  The plaintiff claims that Captain Hewlett expressed happiness that she would be on leave because of an injury, and that Captain Barrett of HMD discriminated against her because she was "sick and injured on the job" and because she was a new officer and looked young. (Pl.'s Am. Compl. ¶¶ 30-31; Defs.' 56.1 Stmt. ¶ 88.)  The plaintiff also claims that Dr. Sach discriminated against her during an appointment for her back injury when she failed to bring proper documentation, treated her poorly, and yelled at her.  (City Defs.' 56.1 Stmt. ¶ 86; Pl.'s Am. Compl. ¶ 31.)  The plaintiff testified that she believed Dr. Sach discriminated against her because she was injured, "young," "new," and "female."  (City Defs.' 56.1 Stmt. ¶ 90.)

4.

The plaintiff alleges that the DOC harassed her when she was out on disability for her back injury.  While on disability, the plaintiff was subject to DOC Directive #2262R-A, which requires that any member who has reported sick for more than nine days or is classified as chronic absent be confined to their home with the exception of doctors' visits or proscribed recreational hours.  (City Defs.' 56.1 Stmt. ¶¶ 92, 95; Canfield

Decl. Ex. G ("DOC Directive #2262R-A") at § III(E)(4).)  On July 18, 2007, the plaintiff submitted a request for a change in her recreational hours, which HMD granted.  (City Defs.' 56.1 Stmt. ¶ 96.)  The plaintiff alleges that DOC employees visited her home during her scheduled recreational hours, despite this scheduling change.  (City Defs.' 56.1 Stmt. ¶ 97.)  The plaintiff testified that she viewed the visits during her recreational hours as harassment.  (Defs.' 56.1 Stmt. ¶¶ 96-97.)

### 5.

The plaintiff claims that Correction Officer Lewis discriminated against her when he denied her request, made on July 18, 2007, to go to the Social Security Administration Office because she was not authorized to go to the Social Security Administration Office.  (Pl.'s Am. Compl. ¶ 33.)

### G.

The plaintiff resigned in a letter from her attorney to the DOC legal department on July 19, 2007.  (City Defs.' 56.1 Stmt. ¶¶ 106-07; Canfield Decl. Ex. BB.)  Following the letter, the plaintiff claims, she continued to receive home visits from the DOC until she formally resigned on October 26, 2007. (City Defs.' 56.1 Stmt. ¶¶ 109-10; Canfield Decl. Ex. DD.)  The plaintiff alleges that her resignation was a constructive

discharge and that the letter sent in July 2007 indicated that she was not resigning voluntarily, but instead as a result of hostile and abusive treatment because of her gender and disability.  (Pl.'s Am. Compl. ¶ 36; City Defs.' 56.1 Stmt. ¶¶ 106-107.)

### III.

The City defendants argue that some of the plaintiff's discrimination claims based on gender or disability are time barred or unexhausted.  The City defendants also argue that the plaintiff's claims based on gender or disability discrimination, hostile work environment, and constructive discharge are without merit.  At oral argument on December 10, 2010, the plaintiff revised her previous allegations as to individual acts of discrimination, and stated that she only alleged claims for hostile work environment and constructive discharge.  (Hr'g Tr. 30:13-18; 33:1-4.)

The plaintiff's concession was well taken.  Many of the individual alleged adverse employment actions listed in the complaint were time barred for purposes of Title VII and the ADA because they occurred more than 300 days before the plaintiff filed her NYSDHR complaint on May 17, 2007.  See 42 U.S.C. § 2000e-5(e); Van Zant v. KLM Royal Dutch Airlines, 80 F.3d 708, 712 (2d Cir. 1996); Sims v. City of New York, No. 08 Civ. 5965,

2010 WL 3825720, at *6 (S.D.N.Y. Sept. 30, 2010); De La Rosa v. N.Y.C. Police Dep't, No. 09 Civ. 5290, 2010 WL 4177626, at *8 (S.D.N.Y. Oct. 22, 2010).  Therefore, all of the alleged incidents of discrimination that occurred before July 21, 2006 would be time barred.  This would include all of the incidents of alleged discrimination based on the plaintiff's pregnancy.

In addition, many of the plaintiff's claims of individual adverse employment actions were unexhausted for purposes of Title VII and ADA because they were not included in the NYSDHR complaint.  A plaintiff filing a Title VII or ADA claim in federal court must exhaust administrative remedies by filing a timely complaint with the EEOC, unless the claim is "reasonably related" to claims alleged in the complaint with the EEOC. Deravin v. Kerik, 335 F.3d 195, 200-01 (2d Cir. 2003). Complaints of discrimination filed with the NYSDHR are considered to be cross-filed with the EEOC.  See Govia v. Century 21, Inc., 140 F. Supp. 2d 323, 325, n. 1 (S.D.N.Y. 2001).  Under Butts v. New York City Department of Housing Preservation & Development, 990 F.2d 1397 (2d Cir. 1993), superseded by statute on other grounds as stated in Hawkins v. 1115 Legal Serv. Care, 163 F.3d 684 (2d Cir. 1998), a claim is "reasonably related" if: (1) the conduct complained of would fall within the scope of the EEOC investigation for the explicit claims asserted in the complaint with the EEOC; (2) the conduct

complained of is retaliation for the complaint filed with the EEOC; or (3) the conduct consists of incidents of discrimination "carried out in precisely the same manner alleged in the EEOC charge." Id. at 1401-03.

The plaintiff's NYSDHR complaint alleged hostile work environment based on incidents relating to her pregnancy, harassment by Allen Blake, Captain Hewett's refusal to allow the plaintiff to take the Captain's exam, and the plaintiff's inability to receive a steady post or a steady tour.  The plaintiff's claims arising from her back injury, Captain Spencer's alleged harassment when the plaintiff visited HMD for vomiting and severe stomach pain, and the various incidents that occurred while the plaintiff was on sick leave are entirely unrelated to the claims brought in the plaintiff's NYSDHR complaint.  As a result, claims based on these incidents are unexhausted and are barred from review by this Court, and the plaintiff has abandoned those claims.


                                  A.

The plaintiff argues that she was subjected to a hostile work environment and that she has submitted sufficient evidence to show, based on the clear discriminatory nature of all of the alleged incidents taken together, the existence of a hostile work environment and harassment.

To establish a prima facie case for hostile work environment, a plaintiff must show (1) discriminatory harassment that was "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment" and (2) a specific basis for imputing the objectionable conduct to the employer. Duch v. Jakubek, 588 F.3d 757, 762 (2d Cir. 2009) (quoting Feingold v. New York, 366 F.3d 138, 149-50 (2d Cir. 2004)); see also Garvin v. Potter, 367 F. Supp. 2d 548, 566 (S.D.N.Y. 2005). A plaintiff alleging a hostile work environment "must demonstrate either that a single incident was extraordinarily severe, or that a series of incidents were 'sufficiently continuous and concerted' to have altered the conditions of her working environment." Cruz v. Coach Stores, Inc., 202 F.3d 560, 570 (2d Cir. 2000) (quoting Perry v. Ethan Allen, Inc., 115 F.3d 143, 149 (2d Cir. 1997)). In addition, because the plaintiff alleges discrimination based on gender and disability, the hostile work environment must be based on gender or disability. See, e.g., Kaytor v. Elec. Boat Corp., 609 F.3d 537, 547 (2d Cir. 2010); Brennan v. Metro. Opera Ass'n, Inc., 192 F.3d 310, 318 (2d Cir. 1999).

The plaintiff has provided insufficient evidence from which a reasonable jury could conclude that she was subjected to a hostile work environment based on her pregnancy. Assuming that the plaintiff's pregnancy qualifies as a disability under the

16

ADA,[2] each of the individual incidents relating to the
plaintiff's pregnancy occurred before the limitations period,
and are therefore time barred.  Hostile work environment claims
are not time barred as long as an act contributing to the claim
occurred within the filing period.  Nat'l R.R. Passenger Corp.
v. Morgan, 536 U.S. 101, 117 (2002).  However, in this case,
none of the acts of alleged pregnancy discrimination occurred
after July 21, 2006, 300 days before the plaintiff filed her
NYSDHR complaint.  The plaintiff learned that she was pregnant
and informed Dr. Lowe, who allegedly failed to record the
information, in January 2006.  The plaintiff also learned that
she had been designated "chronic absent" in January 2006.  The
City defendants required the plaintiff to appear at HMD when she
experienced complications with her pregnancy in January 2006.
The plaintiff miscarried in early February 2006 and returned to
work in March 2006.  None of the incidents that the plaintiff
claims were hostile, and that occurred after July 21, 2006, were
linked in any way to her pregnancy.  All of the incidents
relating to the plaintiff's pregnancy occurred more than 300
days before she filed her NYSDHR complaint.  Because none of the
alleged actions relating to the plaintiff's pregnancy occurred

---

[2] While under certain rare circumstances pregnancy can be sufficient to
establish a disability, generally, pregnancy does not qualify as a
disability.  See Spees v. James Marine, Inc., 617 F.3d 380, 396 (6th Cir.
2010); Dantuono v. Davis Vision Inc., No. 07 Civ. 2234, 2009 WL 5196151, at
*4 (E.D.N.Y. Dec. 29, 2009); Minott v. Port Auth. of N.Y. and N.J., 116 F.
Supp. 2d 513, 525 (S.D.N.Y. 2000).

within 300 days of when the plaintiff filed the NYSDHR
complaint, the plaintiff's claim for hostile work environment
based on her pregnancy is time barred.

In any event, the plaintiff has failed to allege
sufficient facts for a reasonable jury to find that the
incidents surrounding her pregnancy were based on discrimination
against the plaintiff because of her pregnancy.  While each of
the incidents was in some way related to the plaintiff's
pregnancy, there is no evidence that the City defendants were
treating the plaintiff poorly because of her pregnancy.  The
plaintiff suggests that her designation as "chronic absent" was
a result of the City defendants' failure to record properly and
recognize her pregnancy as the reason for her absences in
December 2005.  However, the plaintiff offers no evidence
suggesting that the City defendants were aware of her pregnancy
when she was designated "chronic absent."  In fact, the
plaintiff testified that she did not know she was pregnant until
January 14, 2006, four days after she was notified of her
designation as "chronic absent," and almost one month after the
plaintiff had accrued the relevant absences.  (Canfield Decl.
Exs. I & Q; Pl.'s July 1 Dep. at 54:18-20.)  The plaintiff had
the right to appeal the designation, but she did not file any
appeals.  (City Def.'s 56.1 Stmt. ¶ 40.)

The plaintiff also offers no evidence suggesting that the City defendants' request that the plaintiff report to HMD on January 28, 2006, consistent with the DOC's policy for "chronic absent" employees, was motivated by pregnancy discrimination rather than an effort to enforce the requirements of DOC directives. (See DOC Directive #2258R-A at § III(I)(1)-(3).) Nor does the plaintiff offer evidence suggesting that Dr. Lowe's alleged failure to record the plaintiff's pregnancy was motivated by discrimination. Furthermore, to the extent the alleged incidents were based on the plaintiff's pregnancy, they were not frequent or severe enough to alter the conditions of the plaintiff's work environment. See, e.g., Alfano v. Costello, 294 F.3d 365, 376-80 (2d Cir. 2002); Shabat v. Blue Cross Blue Shield of Rochester Area, 925 F. Supp. 977, 982 (W.D.N.Y. 1996) aff'd sub nom. Shabat v. Billotti, 108 F.3d 1370 (2d Cir. 1997).

The plaintiff has also provided insufficient evidence to demonstrate a hostile work environment claim based on her gender. The plaintiff has offered no evidence suggesting that any of the incidents relating to her back injury, her treatment by Captain Spencer when she was waiting to go to the hospital for vomiting and severe abdominal pain, the denial of her various requests for a steady post or a steady tour, or her treatment while on sick leave were based on her gender. Nor are

19

the alleged incidents pervasive or severe enough to have altered the plaintiff's work environment.  See Alfano, 294 F.3d at 376-80.  Because the plaintiff has failed to allege incidents sufficient to establish a hostile work environment based on gender or pregnancy, her hostile work environment claim must be dismissed.

**B.**

The City defendants argue that the plaintiff's constructive discharge claim must be dismissed because the plaintiff has failed to allege any objectively intolerable employment conditions that would have forced her to resign.  The plaintiff contends that the hostile work environment based on her gender and disability caused a constructive discharge.

The plaintiff's claim for constructive discharge is procedurally barred because the plaintiff never presented it to the NYSDHR and it is not reasonably related to the claims presented to the NYSDHR.  See Butts, 990 F.2d at 1401-03.  The plaintiff resigned on July 19, 2007, approximately two months after she filed her NYSDHR complaint.  The claim was obviously not included in her NYSDHR complaint and it does not fall within any of the Butts exceptions.  The plaintiff could have filed another complaint with the NYSDHR alleging constructive

20

discharge, but chose not to do so.  Therefore, the claim is unexhausted and can be denied on that basis alone.

In any event, the claim is without merit.  "An employee is constructively discharged when [her] employer, rather than discharging [her] directly, intentionally creates a work atmosphere so intolerable that [she] is forced to quit involuntarily."  See Terry v. Ashcroft, 336 F.3d 128, 151-52 (2d Cir. 2003).  Working conditions are considered intolerable when, "viewed as a whole, they are 'so difficult or unpleasant that a reasonable person in the employee's shoes would have felt compelled to resign.'"  Id. at 152 (quoting Chertkova v. Conn. Gen. Life Ins. Co., 92 F.3d 81, 89 (2d Cir. 1996)).  In addition, to state a prima facie claim for constructive discharge, the plaintiff must show that a motivating factor for the City defendants' actions forcing her to quit was her gender or disability.  Id.; see also Donelli v. Cnty. of Sullivan, No. 07 Civ. 2157, 2009 WL 2365551, at *11 (S.D.N.Y. July 31, 2009).

In this case, the plaintiff has not provided facts from which a reasonable jury could conclude that the plaintiff was constructively discharged.  The plaintiff claims that she was subjected to a hostile work environment that caused her constructive discharge.  However, as discussed above, the plaintiff has not provided sufficient facts for a reasonable jury to find that a hostile work environment based on her gender

21

or disability existed.  Moreover, when the plaintiff resigned
she had been on sick leave for approximately five months.  Thus,
her exposure to working conditions and contact with the City
defendants was minimal.  The plaintiff only alleges three
incidents that occurred during her sick leave: (1) Captain
Barrett at HMD and Dr. Sach were allegedly rude and
discriminated against the plaintiff when treating her back
injury, (2) the DOC allegedly visited the plaintiff at her home
during her recreational hours, and (3) Officer Lewis denied the
plaintiff's request to go to the Social Security Administration
Office.  The City defendants did not threaten to remove the
plaintiff from sick leave or threaten to fire the plaintiff if
she did not return from sick leave.  A reasonable jury could not
find that these incidents, which encompass the only alleged
incidents for approximately five months prior to the plaintiff's
resignation, created a work atmosphere that was so intolerable
that the plaintiff had no choice but to quit.  See, e.g.,
Petrosino v. Bell Atl., 385 F.3d 210, 229-32 (2d Cir. 2004);
Dean v. Westchester Cnty. Dist. Attorney's Office, 119 F. Supp.
2d 424, 431 (S.D.N.Y. 2000).  In addition, the plaintiff has
provided no evidence suggesting that these incidents were
related to her gender or pregnancy.  Thus, there is no direct or
indirect evidence to support an inference that the plaintiff was

forced to resign because of her gender or disability.  The plaintiff's constructive discharge claim is therefore dismissed.

### C.

The plaintiff has also brought claims under the NYSHRL and New York state tort law.  A district court may decline to hear a state law claim if that court has dismissed all claims over which it has original jurisdiction.  28 U.S.C. § 1367(c). Because all of the plaintiff's federal claims against the City defendants must be dismissed, the Court declines to exercise supplemental jurisdiction over the state law claims against the City defendants.  See 28 U.S.C. § 1367(c)(3) (district court may decline to exercise supplemental jurisdiction when it "has dismissed all claims over which it has original jurisdiction"); Marcus v. AT&T Corp., 138 F.3d 46, 57 (2d Cir. 1998) ("In general, where the federal claims are dismissed before trial, the state claims should be dismissed as well."); Int'l Media Films, Inc. v. Lucas Entm't, Inc., 703 F. Supp. 2d 456, 466 (S.D.N.Y. 2010).[3]

---

[3] Claims under the NYSHRL raise additional issues.  The statute of limitations for a violation of the NYSHRL is three years, rather than 300 days measured from the date of the violation to the filing of the administrative complaint as is true for claims under Title VII and the ADA.  See Grant v. Pathmark Stores, Inc., No. 06 Civ. 5755, 2009 WL 2263795, at *11 (S.D.N.Y. July 29, 2009); Hill v. Citibank Corp., 312 F. Supp. 2d 464, 474 (S.D.N.Y. 2004).  In addition, while there is no exhaustion requirement under the NYSHRL, the filing of such a complaint constitutes an election of remedies that bars judicial consideration of such a claim unless the complaint is dismissed for

**IV.**

The Union Defendants move for summary judgment on all claims against them.

**A.**

The Union argues that the plaintiff cannot establish her claims of gender or pregnancy discrimination under Title VII. Title VII makes it unlawful for a labor organization to discriminate against an individual on the basis of race, color, religion, sex, or national origin.  42 U.S.C. §2000e-2.

The plaintiff's claim of discrimination against the Union is based on the Union's alleged failure to represent adequately the plaintiff's grievances with the DOC.  Allegations of improper grievance handling by a Union brought under Title VII must satisfy the same requirements as other breach of duty of fair representation claims.  Ross v. Commc'n Workers of Am., Local 1110, No. 91 Civ. 6367, 1995 WL 351462, at *5 (S.D.N.Y. June 9, 1995).  The Court of Appeals for the Second Circuit has explained:

> To establish a prima facie claim of discrimination against a union in connection with grievance representation, a plaintiff is required to show that: (1) the company committed a violation of the collective bargaining

administrative convenience.  See New York Exec. L. § 297(9); Moodie v. Fed. Reserve Bank of New York, 58 F.3d 879, 882-84 (2d Cir. 1995).

24

> agreement with respect to plaintiff; (2) the Union
> permitted that breach to go unrepaired, thus breaching its
> own duty of fair representation; and (3) there was some
> indication that the Union's actions were motivated by
> discriminatory animus.

Vaughn v. AT&T, 92 Fed. Appx. 21, 23 (2d Cir. 2004) (summary order).

The Union defendants assert that the Union satisfied its duty of fair representation to the plaintiff.  Significantly, the plaintiff has not alleged that the Union violated its duty of fair representation.  Rather, the plaintiff urges, her claims are not duty of fair representation claims but are discrimination claims.  (Pl.'s Mem. in Supp. of Denial of Union's Mot. at 16.)  The Union has proffered evidence that it represented the plaintiff's interest and the plaintiff does not attempt to argue otherwise.  The plaintiff's failure to claim a breach of the duty of fair representation is inconsistent with a claim of discrimination based on the Union's alleged failure to represent her in the investigation of her grievance.  The plaintiff has also failed to provide evidence that the Union treated her differently from other union members because of her gender or disability.  Therefore, the plaintiff's discrimination claim against the Union must be dismissed.

**B.**

The Union defendants challenge the plaintiff's sexual harassment claim on the grounds that the plaintiff failed to exhaust administrative remedies and that the claim is without merit.

As discussed above, a plaintiff filing a Title VII claim in federal court must exhaust administrative remedies by filing a timely complaint with the NYSDHR or the EEOC. Deravin, 335 F.3d at 200-03. The plaintiff did not exhaust administrative remedies with respect to the charge of sexual harassment. Although the NYSDHR complaint alleged that Allen Blake "insinuat[ed] that [the plaintiff] should not have gotten pregnant because she was on probation," nothing in the complaint suggested that this constituted sexual harassment or that Blake had in any other way acted inappropriately toward the plaintiff. (NYSDHR Complaint § 5.) Thus, claims of sexual harassment against the Union defendants are not reasonably related to the plaintiff's NYSDHR complaint. See, e.g., Okon v. Appia, No. 06 Civ. 6810, 2008 WL 2245431, at *7-*8 (E.D.N.Y. May 29, 2008) (finding alleged "cuddling, fondling, or pinching" not reasonably related to a complaint that alleged harassing statements, because physical touching was "quite different in manner than the conduct alleged in plaintiff's EEOC charge").

The plaintiff's claim of sexual harassment is therefore dismissed because it is unexhausted.

The plaintiff's claim of sexual harassment against the Union also fails on the merits.  In order to establish a prima facie case of hostile work environment sexual harassment, a plaintiff must show (1) discriminatory harassment that was "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment," and (2) a specific basis for imputing the objectionable conduct to the employer.  Perry, 115 F.3d at 149 (quoting Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993); see also Matlosz v. J.P. Morgan Chase, No. 03 Civ. 6235, 2005 WL 2242196, at *9 (S.D.N.Y. Sept. 3, 2005).

In this case, the plaintiff's sexual harassment claim is based entirely on Allen Blake asking the plaintiff out on a date between one and five times and Blake grabbing plaintiff's neck and attempting to kiss her.  (Pl.'s Am. Compl. ¶ 28.)  These alleged incidents do not rise to the level of pervasiveness or severity necessary to establish a sexual harassment hostile work environment.  See Perry, 115 F.3d at 149.  The plaintiff's sexual harassment claim against the Union defendants therefore fails on its merits and must be dismissed.

27

**D.**

Because the federal claims against the Union defendants must be dismissed, the Court declines to exercise supplemental jurisdiction over the state law claims. See 28 U.S.C. § 1367(c)(3); Marcus, 138 F.3d at 57.

**V.**

The Union defendants also argue that Rule 11 sanctions should be imposed on the plaintiff for including the intentional infliction of emotional distress claim, which the Union defendants claim is plainly time barred. See Fed. R. Civ. P. 11(b)(2). It is unnecessary to address the merits of this motion because Rule 11 provides that "[a] motion for sanctions must be made separately from any other motion." Fed. R. Civ. P. 11(c)(2). The motion is required to be served under Rule 5 and the plaintiff is to be given 21 days to withdraw the offending paper. Id.

Because the Union defendants failed to comply with the Rule 11 procedure, the motion for sanctions under Rule 11 is denied.

**CONCLUSION**

The Court has carefully considered all of the parties' arguments. To the extent that they are not dealt with above, they are either moot or without merit. For all of the foregoing

28

reasons, the motions for summary judgment by the defendants are granted with respect to all federal claims, which are dismissed with prejudice.  All state law claims are dismissed without prejudice because the Court declines to exercise supplemental jurisdiction over them.  The motion for sanctions by the Union defendants is denied.  The clerk is directed to enter judgment accordingly and to close this case and all pending motions.

SO ORDERED.

Dated:     New York, New York
           March 24, 2011

                                        John G. Koeltl
                                United States District Judge

29